# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **AMBER TERRETA AND DEBRA RAYNER,** | CASE NO. |
| *Individually and on Behalf of All Others Similarly Situated*, | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | (1)  Violations of Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq*. |
| **SPIRIT AIRLINES, INC.,** | (2)  Breach of Contract |
| Defendant. | (3)  Fraud |
| | (4)  Unjust Enrichment |
| | (5)  Alternative Count for Violation of State Consumer Protection Acts |

 NOW COME Plaintiffs, AMBER TERRETA and DEBRA RAYNER, on behalf of themselves and all others similarly situated, and allege as follows:

## I.  Introduction:

1.  During the peak of summer travel season, Spirit, Inc. ("Spirit" or "the Company") left tens of thousands of passengers stranded at airports throughout the country when it fraudulently and deceptively induced customers to purchase tickets for flights the Company knew would not fly.

2.  Spirit, notorious for its low prices and no-frills flying experience, was well aware it could not handle the glut of tickets sold.  Nevertheless, the Company continued to sell tickets to unwitting customers, leaving them stranded without recompense or communication.

3.      Between July 30, 2021 and August 9, 2021, Spirit canceled approximately 2,826 flights, accounting for more than half of the Company's scheduled flights on multiple days.

4.      Spirit cancelled flights during this time because it had a severe labor shortage caused by the Company's knowing failure to hire and maintain sufficient staffing levels necessary to provide promised services to its customers.

5.      Thousands of customers, like Plaintiffs, purchased tickets relying on Spirit's promise to handle the traffic of its scheduled flights only to be left stuck for hours or days on end in airports with little or no communication from the Company.  These travelers would likely not have purchased flight tickets from Spirit had they known the true status of Spirit's labor shortages and its inability to accommodate the purchased travel arrangements.

6.      Instead, Spirit ignored its customers, refusing to compensate passengers for cancelled flights, and failing to make alternative travel arrangements on other airlines or provide hotel accommodations.

7.      Spirit's actions directly caused their customers immense stress and discomfort, incur increased travel fees, and to miss thousands of family and business events.

8.      By Spirit's own admission, Spirit "couldn't get in front of it."[1]

9.      To date, Spirit continues to hold Plaintiffs' and tens of thousands of other passengers' money used to purchase tickets for the cancelled flights.

10.     Accordingly, Plaintiffs, for themselves and all others similarly situated, bring this action for reimbursement requiring Spirit to refund all ticket purchases for cancelled flights during the applicable time period, make whole all class members for all costs, inconveniences,

---

[1] Leslie Josephs, *'We couldn't get in front of it.' Spirit Airlines CEO explains what caused the carrier's meltdown*, CNBC, Aug. 6, 2021, https://www.msn.com/en-us/money/news/we-just-couldnt-get-in-front-of-it-spirit-airlines-ceo-explains-what-caused-the-carriers-meltdown/ar-AAMZURJ?pfr=1.

economic losses associated therewith, attorney fees, and such other damages permitted under applicable law, in an amount to be determined at trial.

## II.    The Parties:

11.    Plaintiff Amber Terreta is an adult resident of the state of Pennsylvania.

12.    Plaintiff Debra Rayner is an adult resident of the state of Pennsylvania.

13.    Defendant Spirit is a Delaware corporation headquartered in Miramar, Florida. Spirit advertises and conducts business in Pennsylvania and Florida among other places.

## III.    Jurisdiction and Venue:

14.    This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

15.    This Court has personal jurisdiction over Spirit by virtue of their doing business in this Judicial District.  Indeed, Spirit's corporate headquarters and thus its principal place of business is located in this Judicial District.

16.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391. Spirit conducted, and continues to conduct, business in this District, and a substantial part of the acts and omissions giving rise to the claims occurred, at least in part, within this District. Spirit markets, advertises, and sells air travel services and otherwise conducts extensive business within this District, including benefitting from substantial revenue and profits from the sales of tickets for cancelled flights in this District.

## IV.    Factual Allegations:

### A.  *Spirit's Knowledge About Labor Shortages:*

17.    Upon information and belief, Spirit laid off or furloughed thousands of employees because of the COVID-19 pandemic.

18.    Upon information and belief, when airline travel rebounded to pre-pandemic levels, Spirit failed to re-hire and/or re-train enough airline employees to staff its operations.

19.    Upon information and belief, Spirit was well aware that it did not have sufficient labor to meet the demand of the number of flights it scheduled between July 30, 2021 and August 6, 2021, which is around the peak of summer travel season.

20.    Upon information and belief, Spirit's known labor shortage was exacerbated by its failure to maintain its flight crew operation systems, causing its already depleted labor supply to not arrive at airports on time to complete its scheduled flights.

21.    Upon information and belief, Spirit did not inform its customers about the Company's labor shortage or operations issues when selling tickets for flights the Company knew would be impossible to complete.

22.    Upon information and belief, Spirit knew that its customers relied on the Company's representations when purchasing tickets that Spirit had the capability and capacity to complete its scheduled flights.  Put another way, Spirit was well aware that customers likely would not have purchased flight tickets had those customers been informed that Spirit was experiencing a severe labor shortage that would likely have an impact on Spirit's ability to provide flight service during the summer travel season.

B. *Spirit Cancels Over 2,800 Flights Between July 30, 2021 and August 6, 2021*

23.     Beginning on July 30, 2021, Spirit cancelled more than 2,800 flights it falsely represented to its customers that it had the capacity and capability to complete.

24.     Upon information and belief, on July 30, 2021, Spirit cancelled approximately 30 flights.

25.     By the close of business on Monday, August 9, 2021, eleven days later, Spirit had cancelled approximately 2,826 flights.

C. *Facts Specific to Plaintiff Amber Terreta:*

26.     On July 25, 2021, Amber Terreta ("Terreta") purchased tickets for herself, Joseph Terreta, and their two minor children to travel on Spirit flight number 1483, scheduled to fly from Latrobe, Pennsylvania to Myrtle Beach, South Carolina on August 5, 2021, and to return on Spirit flight 1680 from Myrtle Beach, South Carolina to Latrobe, Pennsylvania on August 9, 2021 for a total of $464.00.

27.     By offering her four reservations for flight number 1483, Spirit represented to Terreta that it had the capability and capacity to complete flight number 1483.

28.     Spirit did not inform Terreta that it suffered from a severe labor shortage and would not be able to complete flight number 1483.

29.     At approximately 2:00 am on August 5, 2021, the date of the Terreta family's departure, Terreta was informed that Spirit flight 1483 had been cancelled.

30.     On August 5, 2021, Spirit cancelled flight number 1483 because it failed to hire or maintain sufficient labor to staff said flight.

31.      Spirit did not arrange alternative travel arrangements for Terreta after cancelling flight number 1483.

32.     Spirit did not refund Terreta the purchase price for flight 1483.

33.     On or about August 15, 2021 Spirit issued to Terreta a "reservation credit" in the amount of $123.80 and travel vouchers totaling $200.00.

34.     The "reservation credit" must be redeemed by December 31, 2021.

35.     The travel vouchers must be redeemed by October 2, 2021.

36.     Spirit Airlines reservation credits/travel vouchers come with attendant restrictions that make their effective value far less than their nominal or face value.[2]

37.     As a result of Spirit's actions, Terreta purchased tickets on another airline at a cost of $1,353.85.

D.   *Facts Specific to Plaintiff Debra Rayner:*

38.     On May 5, 2021, Debra Rayner ("Rayner") and her traveling companion Desiree Grimmer ("Grimmer") reserved seats to travel on Spirit flight number 395, scheduled to fly from Philadelphia, Pennsylvania to Las Vegas, Nevada on August 1, 2021, and to return on Spirit flight 396 from Las Vegas, Nevada to Philadelphia, Pennsylvania on August 6, 2021 for a total airfare charge of $635.56.

39.     By offering her a reservation for flight numbers 395 and 396, Spirit represented to Rayner that it had the capability and capacity to complete flight numbers 395 and 396.

40.     Spirit did not inform Rayner that it suffered from a severe labor shortage and would not be able to complete flight numbers 395 and 396.

41.     At approximately 3:00 am on August 1, 2021, the date of Rayner's departure, Rayner was informed via e-mail that Spirit flight 395 had been cancelled.

---

[2] Mark Ostermann, *Why Spirit Airlines' Vouchers Are Pretty Much Useless Garbage*, MILES TO MEMORIES https://milestomemories.com/spirit-airlines-voucher-rules-are-punitive/.

42.     On August 1, 2021, Spirit cancelled flight number 395 because it failed to hire or maintain sufficient labor to staff said flight.

43.      Spirit did not arrange alternative travel arrangements for Rayner after cancelling flight number 395.

44.     At approximately 11:00 pm on August 6, 2021, the date of Rayner's departure, Rayner was informed via e-mail that Spirit flight 396 had been cancelled.

45.     On August 6, 2021, Spirit cancelled flight number 396 because it failed to hire or maintain sufficient labor to staff said flight.

46.     Spirit refunded Rayner the purchase price for flight 396 on or about August 20, 2021, approximately fifteen days after her request for a refund.

47.     As a result of Spirit's actions, Rayner purchased tickets on another airline for travel from Philadelphia to Las Vegas at a cost of $538.00 and from Las Vegas to Philadelphia at a cost of $170.00.

   E.  *Facts Common to All Class Members:*

48.     Unfortunately, the Plaintiffs were not uniquely situated. Spirit left tens of thousands of passengers on more than 2,800 flights in an eleven-day period stranded because of the Company's known labor shortage.

49.     The claims of the proposed Classes all derive directly from Spirit's deceptive practices and knowing failure to hire and maintain sufficient labor necessary to staff its scheduled flights.

50.     As such, Spirit engaged in uniform and standardized conduct toward the proposed Classes. It did not differentiate, in degree of care or candor, in its actions or inactions, or in the content of its statements or omissions, among individual Class members.

51.     The objective facts on these subjects are the same for all Class members.

52.     Within each Claim for Relief asserted by the respective proposed Classes, the same legal standards govern.

53.     Additionally, many states — and for some cause of action, all states — share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims.

54.     Accordingly, Plaintiffs bring this lawsuit as a class action on her own behalf, and on behalf of all other persons similarly situated, as members of the proposed Classes identified below, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4).

55.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

## V.     Class Action Allegations:

56.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action individually and on behalf of the following proposed nationwide class of persons, initially defined as:

**Nationwide Class:**

57.     All persons or entities who purchased tickets for domestic and international Spirit flights scheduled between July 30, 2021 and August 9, 2021 ("Class Flights") that Spirit cancelled because of its labor shortage.

58.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs seek to represent the following state classes, if the Court declines to certify the Nationwide Class above.  Specifically, the State Class consist of the following:

**Florida State Class:**

59.     All persons or entities who are Florida residents and who purchased tickets for domestic and international Spirit flights scheduled between July 30, 2021 and August 9, 2021 that Spirit cancelled.

60.     Together, the Nationwide Class and the State Class shall be collectively referred to herein as (the "Class").

61.     The Class and State Class do not include Defendant; any affiliate, parent or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director or employee of Defendant; any successor or assign of Defendant; Plaintiffs' counsel or anyone employed by Plaintiffs' counsel in this action and their immediate families; any judge to whom this case is assigned and any member of his/her immediate family and staff; governmental entities; or individuals who have personal injury claims as a result of conduct and/or defects alleged herein.

62.     Plaintiffs reserve the right to amend or supplement the Class descriptions with greater specificity or further division into subclasses or limitation to certain issues, after conducting discovery in this matter.

63.     Plaintiffs also reserve the right to amend or supplement the proposed Class Flights after conducting discovery in this matter.

A.     *Fed. R. Civ. P. 23 Class Certification Requirements:*

64.     **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that Spirit sold tens of thousands of tickets for flights that were cancelled between July 30, 2021 and August 9, 2021.

9

Disposition of the claims in a class action context will provide substantial benefits to the parties and the Court.

65.     **Commonality and Predominance** – Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2) and (b)(3). These common questions include, but are not limited to:

66.     Whether Spirit engaged in the conduct alleged herein;

67.     Whether Spirit advertised, marketed, sold, or otherwise placed the Class Flights into the stream of commerce in the United States;

68.     Whether a reasonable consumer would consider Spirit's labor shortage alleged herein material to the decision to purchase a ticket for the Class Flights;

69.     When Spirit discovered, knew, or should have known of its labor shortage and its subsequent actions and/or inactions related thereto;

70.     Whether Spirit had a duty to disclose the true nature of the Class Flights to Plaintiffs and Class Members;

71.     Whether Plaintiffs and Class Members suffered out-of-pocket losses as a result of the Spirit's actions and/or inactions alleged herein, and if so, how much;

72.     Whether Plaintiffs and Class Members will suffer out-of-pocket losses as a result of Spirit's alleged actions and/or inactions alleged herein, and if so, how much;

73.     Whether Plaintiffs and Class Members are entitled to damages and monetary relief and, if so, in what amount;

74.     Whether Spirit omitted, concealed, and/or failed to disclose material facts about its ability to provide the Class Flights;

75.     Whether Spirit's concealment of the true nature its ability to provide the Class Flights would have induced a reasonable consumer to act to his or her detriment by purchasing tickets for the Class Flights;

76.     Whether Plaintiffs and Class Members are entitled to rescission of their flight purchase contracts;

77.     Whether Spirit failed to refund purchasers of cancelled flights within a reasonable time and the damages caused thereby;

78.     Whether Spirit violated the terms of its Contract of Carriage; and

79.     Whether Spirit's conduct violated the laws as set forth in the causes of action alleged in this Complaint, including but not limited to, the Florida and other applicable states' Consumer Protection and false advertising laws, contract and tort law.

80.     **Typicality** – The claims of the representative Plaintiffs are typical of the claims of each member of the Class, thus satisfying Fed. R. Civ. P. 23(a)(3).  Plaintiffs, like all other members of the Class, has sustained damages arising from Spirit's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Spirit. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of all other members of the Class.

81.     **Adequacy** – The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class Members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation, thus satisfying Fed. R. Civ. P. 23(a)(4). There are no material conflicts between the claims of the representative

Plaintiffs and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

82.     **Declaratory or Injunctive Relief** – Spirit has acted and refused to act on grounds generally applicable to Plaintiffs and Members of the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate regarding the Class as a whole. Fed. R. Civ. P. 23(b)(2).

83.     **Superiority** – This suit may be maintained as a class action under Fed. R. Civ. P. 23(b)(3), because a class action is superior to any other available means for the fair and efficient adjudication of this dispute and no unusual difficulties are likely to be encountered in its management of this class action. The damages suffered by individual class members are small in comparison to the burden and expense of individually litigating each claim and based on the complex and extensive litigation needed to address Spirit's conduct. Further, it would be virtually impossible for the Class Members to individually redress effectively the wrongs done to them. Even if Class Members themselves could afford such individual litigation, the court system could not.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

84.     **Ascertainability**: Upon information and belief, the precise number of Class Members may be ascertained from Spirit's records. Plaintiffs contemplate the eventual issuance

of notice to the proposed Class members setting forth the nature of the instant action. Upon information and belief, Class members may be notified of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media, and published notices, in addition to Spirit's own business records.

**VI.    Claims for Relief:**

**COUNT ONE**
**VIOLATIONS OF FLORIDA UNFAIR AND DECEPTIVE**
**TRADE PRACTICES ACT, FLA. STAT. § 501.201 ET SEQ.**

85.    Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in paragraphs 1 through 84 as though fully stated herein.

86.    The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the state.

87.    Spirit materially misrepresented its capability and capacity complete flights to customers who purchased tickets for the Class Flights.

88.    Spirit materially misrepresented it had sufficient flight crews to staff flights to customers who purchased tickets for the Class Flights.

89.    Spirit's actions and/or inactions directly injured Plaintiffs and the Class Members.

90.    Plaintiffs and the Class Members seek to recover all permitted damages and their attorneys' fees caused by Defendant's violations of the FUDTPA.

**COUNT TWO**
**BREACH OF CONTRACT**

91.    Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in paragraphs 1 through 84 as though fully stated herein.

92.     Plaintiffs' and other Class members' purchase of tickets for the Class Flights constituted a contract between them and Spirit.

93.     Plaintiffs and the Class Members performed all requirements under their agreements with Spirit.

94.     Spirit breached its agreement with Plaintiffs and the Class Members when it cancelled the Class Flights.

95.     Spirit breached these contracts by retaining Plaintiffs and Class members' airline ticket fees while not providing flight services.

96.     Even for those passengers who Spirit did refund, Spirit did not do so within a reasonable time.

97.     Given that Defendant has its customers payment card information, Defendant can charge its customers within seconds.

98.     Conversely, refunds should be capable of being issued immediately, which Spirit has not done.

99.     Plaintiffs and members of the Class have suffered an injury through the payment of money for tickets while not receiving services in return.

100.     Due to Spirit's dilatoriness, Plaintiffs and members of the Class have also suffered injury in the form of (1) interest on the money they paid for the tickets, and (2) lost time and resources spent trying to procure refunds from Spirit in a reasonable amount of time.

101.     Spirit was grossly negligent in that it failed to issue refunds within a reasonable time, despite being able to do so immediately.  *See, e.g., De Cespedes v. Bolanos*, 711 So. 2d 216, 218 (Fla. 3d DCA 1998) (recognizing that when a contract fails to provide a specific time for performance, the law implies a reasonable time for performance); *Fleming v. Burbach Radio,*

*Inc.*, 377 So. 2d 723, 724 (Fla. 4th DCA 1980) (same). And what constitutes a reasonable time for performance depends on the facts of the case, including the subject matter of the contract, the situation of the parties, and the parties' agreement when they entered into the contract. *See, e.g., Sound City, Inc v. Kessler*, 316 So. 2d 315, 317 (Fla. 1st DCA 1975); *Cocoa Props., Inc. v. Commonwealth Land Title Ins. Co.*, 590 So. 2d 989, 991 (Fla. 2d DCA 1991).

102.    Spirit did not issue refunds within a reasonable amount of time intentionally, particularly given the dire situation in which it left its passengers due to a problem of Spirit's own making. In fact, Spirit has crafted its Contract of Carriage so as to grant to itself unilaterally a shield from its own willful and deliberate breach of the same: "Spirit shall in no event be liable for direct, indirect, special or consequential damages resulting from the performance or delay in performance of, or failure to perform, transportation of guests and other services ***whether or not Spirit has knowledge that such damages might be incurred***." *Contract of Carriage*, Jun. 24, 2021, ¶ 12.1. Plaintiffs and Class members are therefore entitled to all incidental, consequential, and indirect damages resulting from Spirit's breach of contract, including but not limited to interest on ticket purchasers and compensation for their lost time.

103.    Spirit's breach caused damages to Plaintiffs and the Class Members.

104.    Plaintiffs and the Class Members seek to recover all permitted damages and their attorneys' fees caused by Defendant's breach.

## COUNT THREE
## PRE-CONTRACTUAL FRAUD

105.    Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in paragraphs 1 through 84 as though fully stated herein.

106.    Spirit made materially false statements about its then-present capability and capacity to complete flights to customers who purchased tickets for the Class Flights.

107.     Spirit knew of the falsity of its statements about its then-present capability and capacity to complete flights to customers who purchased tickets for the Class Flights.

108.     Spirit intended to defraud Plaintiffs and the Class Members through its materially false statements of present fact in order to induce them to purchase tickets for the Class Flights, which Spirit knew it could not staff.

109.     Plaintiffs and the Class Members reasonably relied on Spirit's representations that it had capability and capacity to complete the Class Flights when they purchased tickets for said flights.

110.     Plaintiffs and the Class Members suffered damages as a result of their reliance on Spirit's false statements of present fact.

111.     Plaintiffs and the Class Members seek to recover all permitted damages and their attorneys' fees caused by Defendant's fraud and also seek rescission of their flight contracts.  *See, e.g., Florida Holding 4800, LLC v. Lauderhill Mall Investment, LLC*, 317 So. 3d 121, 124 (Fla. 4th DCA 2021) (recognizing general rule that entire contract is unenforceable when entered into through fraudulent inducement); *see also Mantilla v. Fabian*, 284 So. 3d 575, 576 (Fla. 4th DCA 2019) (per curiam) ("Our supreme court has spoken clearly that no contract provision can preclude rescission on the basis of fraud in the inducement unless the contract provision explicitly states that fraud is not a ground for rescission.") (quoting *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So. 3d 517, 520 (Fla. 4th DCA 2011) (citing *Oceanic Villas, Inc. v. Godson*, 148 Fla. 454, 4 So. 2d 689, 690 (Fla. 1941)).

## COUNT FOUR
### PRE-CONTRACTUAL NEGLIGENT MISREPRESENTATION

112.     Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in paragraphs 1 through 84 as though fully stated herein.

113.    Spirit made material statements about its then-present capability and capacity to complete flights to customers who purchased tickets for the Class Flights that Spirit believed to be true but were in fact false.

114.    Spirit should have known of the falsity of its statements about its then-present capability and capacity to complete flights to customers who purchased tickets for the Class Flights.

115.    Spirit intended to defraud Plaintiffs and the Class Members through its material, false statements of present fact in order to induce them to purchase tickets for the Class Flights, which Spirit knew it could not staff.

116.    Plaintiffs and the Class Members justifiably relied on Spirit's representations that it had capability and capacity to complete the Class Flights when they purchased tickets for said flights.

117.    Plaintiffs and the Class Members suffered damages as a result of their reliance on Spirit's false statements of present fact.

118.    Plaintiffs and the Class Members seek to recover all permitted damages and their attorneys' fees caused by Defendant's fraud and also seek rescission of their flight contracts. *Lorber v. Passick*, 46 Fla. L. Weekly D1952 (Fla. 4th DCA September 1, 2021).

**COUNT FOUR**
**RESTITUTION AND UNJUST ENRICHMENT**

119.    Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in paragraphs 1 through 84 as though fully stated herein.

120.    Spirit knew or should have known that Plaintiffs and the Class Members paid for the Class Flights with the expectation that the Company would perform as represented.

121.    Plaintiffs and the Class Members conferred substantial benefits on Spirit by purchasing tickets for the Class Flights.

122.    Spirit knowingly and willingly accepted and enjoyed those benefits.

123.    Spirit's retention of these benefits is inequitable and would be against good conscience the permit the Company to retain such benefits.

124.    As a direct and proximate cause of Spirit's unjust enrichment, Plaintiffs and the Class Members are entitled to restitution, attorneys' fees, costs and interest.

**COUNT FIVE**
**ALTERNATIVE COUNT FOR VIOLATION OF**
**STATE CONSUMER PROTECTION ACTS**

125.    Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in paragraphs 1 through 84 as though fully stated herein.

126.    Plaintiffs bring this alternative cause of action on behalf of themselves  and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:

  a.    the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 et seq.;
  b.    the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, et seq.;
  c.    the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.;
  d.    the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;
  e.    the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. and 17500, et seq.;

f. the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;

g. the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, et seq.;

h. the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42- 110, et seq.;

i. the Delaware Consumer Fraud Act, 6 Del. Code § 2513, et seq.;

j. the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, et seq.;

k. the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.;

l. the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, et seq.;

m. the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, et seq.;

n. the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, et seq.;

o. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, et seq.;

p. the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, et seq.;

q. the Iowa Private Right of Action For Consumer Frauds Act, Iowa Code § 714h.1 et seq.;

r. the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, et seq.;

s. the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.;

t. the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq.;

u. the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.;

v. Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law § 13-101, et seq.

w. the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, et seq.;

x. the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq.;

y. the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

z. the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, et seq.;

aa. the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101 et seq.;

bb. the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, et seq.;

cc. the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, et seq.

dd. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. § 358-A:1, et seq.;

ee. the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, et seq.;

ff. the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.;

gg. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq.;

hh. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;

ii. the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, et seq.;

jj.   the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq.;

kk.   the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, et seq.;

ll.   the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

mm.   the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;

nn.   the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), et seq.;

oo.   the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5- 10, et seq.;

pp.   the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, et seq.;

qq.   the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.;

rr.   the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, et seq.;

ss.   the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, et seq.;

tt.   the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

uu.   the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, et seq.;

vv.   the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et seq.;

ww.   the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A, et seq.;

xx.   the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, et seq.; and

yy.   the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, et seq. 223.

127. Spirit's acts, practices, misrepresentations and omissions and deceptive and misleading advertising and marketing in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

128. Plaintiffs, on behalf of themselves and the other Class Members, seek monetary damages, treble damages, and such other and further relief as set forth in each of the above enumerated statutes.

## VII.    Prayer for Relief:

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

A.    For an order certifying the Class, appointing Plaintiffs as Representative of the Class, and appointing the law firm representing Plaintiffs as counsel for the Class;

B.    For compensatory damages and/or restitution or refund of all funds acquired by Spirit from Plaintiffs and the Class Members as a result of the Company's unlawful, unfair, deceptive and unconscionable practices described herein and in the consumer protection statutes of Florida and such other States in which Class Members reside, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

C.    For compensatory damages caused by Spirit's breach of contract with Plaintiffs and the Class Members to the extent permitted by law in an amount to be proven at trial;

D.    For compensatory damages caused by Spirit's fraud regarding cancellation of the Class Flights to the extent permitted by law in an amount to be proven at trial;

E.    Payment of costs and expenses of suit herein incurred;

F.    Both pre-and post-judgment interest on any amounts awarded;

G.    Payment of reasonable attorneys' fees and expert fees;

H.    Punitive damages where available; and

I.    Such other and further relief as the Court may deem proper.

## VIII.   Demand for Jury Trial:

Plaintiffs and the Classes hereby demand trial by jury of all issues triable by right.

Dated: October 15, 2021   Respectfully submitted,

         */s/ Marcus W. Corwin, Esq.*
         Marcus W. Corwin, Esq.
         Stephen L. Conteaguero, Esq.
         MARCUS W. CORWIN, P.A. d/b/a CORWIN LAW
         6001 Broken Sound Parkway NW, Suite 404
         Boca Raton, FL 33487
         561.482.3636 – Telephone
         561.482.5414 – Facsimile
         mcorwin@corwinlawfirm.com
         sconteaguero@corwinlawfirm.com
         *Attorneys for Plaintiffs and the Proposed Class*